UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP CALLOWAY,

          Petitioner,

                                  CASE NO. 2:11-CV-10005

v.                           JUDGE GEORGE CARAM STEEH
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

GREG McQUIGGIN,

          Respondent.

_____/

**REPORT AND RECOMMENDATION ON PETITIONER'S MOTION TO AMEND**
**(docket #12)**

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's motion to amend and request

for a stay.

II.    <u>REPORT</u>:

A.    *Procedural History*

Petitioner Phillip Calloway, a state prisoner, filed an application for the writ of habeas corpus

on January 3, 2011, challenging his 2009 state court convictions for second degree murder, assault

with intent to commit murder, and possession of a firearm during the commission of a felony.  In

his original application, petitioner raised as grounds for relief the two claims that he raised on direct

appeal in the Michigan courts: (1) insufficient evidence; and (2) improper prosecutorial comment

on petitioner's right to remain silent.  Petitioner subsequently filed a motion to amend the petition

and a request to stay so that he could exhaust additional claims in the state courts.  On November

20, 2012, I entered an Order granting petitioner's motion to amend, construing the motion as raising

solely a claim that he was denied a fair trial because the oath given to the jury was defective.  I also

denied petitioner's request for a stay, because that claim was "plainly meritless."  Although

petitioner's motion to amend itself referenced only his defective jury oath claim, the brief in support

of that motion raised five additional claims, identified as claims II through VI:

> II. THE TRIAL COURT'S REASONABLE-DOUBT INSTRUCTIONS OMITTED THE MORAL CERTAINTY REQUIREMENT AND FAILED TO ADEQUATELY EXPRESS THAT THE JURORS HAD TO HAVE AN ABIDING CONVICTION AS TO GUILT. THIS WAS STRUCTURAL ERROR REQUIRING AUTOMATIC REVERSAL.

> III. DEFENDANT IS ENTITLED TO RELIEF WHERE HE WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER XIV AMS TO THE U.S. CONST . . . WHERE THE TRIAL COURT WHEN INSTRUCTING ON THE STEP ORDER OF CONSIDERATION FAILED TO EXPLAIN TO THE JURY THAT THEY COULD RETURN A NOT GUILTY VERDICT ON DEFENDANT'S DEFENSE OF SELF-DEFENSE.

> IV. DEFENDANT IS ENTITLED TO RELIEF WHERE HE WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL UNDER THE VI AMENDMENTS AND UNDER CONST 1963, ART 1, SEC 17, AND SEC 20.

> V. DEFENDANT IS ENTITLED TO RELIEF WHERE HE WAS DENIED DUE PROCESS AND A FAIR TRIAL UNDER THE XIV AM TO THE U.S. CONST. AND UNDER CONST, 1963, ART 1, SEC 17 WHEN THE TRIAL COURT INSTRUCTED ON VOLUNTARY MANSLAUGHTER BUT FAILED TO DISTINGUISH BETWEEN VOLUNTARY AND INVOLUNTARY MANSLAUGHTER.

> VI. DEFENDANT IS ENTITLED TO RELIEF UNDER EITHER STATUTORY OR COURT RULE AND CAN SHOW CAUSE AND PREJUDICE BY THE INEFFECTIVE ASSISTANCE OF HIS APPELLATE COUNSEL, ON APPEAL AS OF RIGHT PROVIDED.

On the same date, I filed a Report recommending that the Court find petitioner's original two claims

and his amended jury oath claim meritless and that the Court therefore deny the petition and deny

petitioner a certificate of appealability.

Both respondent and petitioner filed objections to my R&R and Order objecting, *inter alia*,

to my failure to address Claims II through VI in petitioner's motion to amend. On April 23, 2013,

the Court entered an Order adopting my Report with respect to the three claims discussed therein, and granting the parties' objections with respect to my failure to address Claims II through VI. The Court therefore set aside my Order denying petitioner's motion to stay and referred the matter back to me for full consideration of petitioner's motion to amend. On June 17, 2013, respondent filed a response to the motion to amend. Respondent does not oppose amendment, but does oppose both a stay and a grant of habeas relief, arguing that petitioner's new claims are meritless. Petitioner filed a reply on June 26, 2013. For the reasons that follow, the Court should deny petitioner's motion to stay and his motion to amend.[1]

B.   *Legal Standards*

Petitioner seeks leave to amend his complaint to add claims that have not yet been exhausted in the state courts, and relatedly a stay of his petition so that he can exhaust those claims in state court. Rule 15 of the Federal Rules of Civil Procedure, which is applicable to this habeas corpus action, *see Mayle v. Felix*, 545 U.S. 644 (2005); 28 U.S.C. § 2242, provides that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). As the Supreme Court has stated, "[i]n the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, as *Foman* makes clear there are certain situations in which it is appropriate to deny leave to amend. One such circumstance

---

[1]A complete procedural history and a full summary of the evidence adduced at trial are set forth in my prior Report and Recommendation, familiarity with which is assumed.

is when amendment would be "futil[e]." *Foman*, 371 U.S. at 182; *see also*, *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003).  Amendment is futile when the proposed amendment is subject to dismissal under Rule 12(b)(6), that is, when the proposed amendment fails to state a claim upon which relief may be granted.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 307 (6th Cir. 2000); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000).

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Court considered the intersection of the total exhaustion rule–which requires a court to dismiss a mixed petition containing exhausted and unexhausted claims–and the habeas statute's one year limitations period, which does not toll the time spent pursuing an unexhausted claim in federal court.  Recognizing "the gravity of this problem and the difficulty it has posed for petitioners and federal district courts alike," *id*. at 275, the Court approved, at least in some circumstances, the lower courts' use of the so-called "stay and abeyance" procedure.  "Under this procedure, rather than dismiss the mixed petition . . . a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims.  Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." *Id*. at 275-76.  Balancing the interests served by the habeas statute's finality and timeliness requirements against the petitioner's interest in having his claims adjudicated in a federal habeas proceeding, the Court concluded that stay-and-abeyance is permissible, but "should be available only in limited circumstances."  *Id*. at 277.  Specifically, stay-and-abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims in state court."  *Id*.  Further, even where good cause is present, the court should not grant

4

a stay where the unexhausted claims are plainly meritless.  *See id.*  Additionally, "if a petitioner

engages in abusive litigation tactics or intentional delay, the district court should not grant him a

stay at all."  *Id.* at 278.

C.    *Analysis*

Here, each of petitioner's proposed claims is plainly meritless.  Thus, leave to amend to add

these claims would be futile, and a stay is not appropriate under *Rhines*.[2]

1.    *Jury Instruction Claims (Claims II, III & V)*

*a.  Governing Law*

In his second, third, and fifth proposed habeas claims, petitioner asserts various challenges

to the jury instructions given in his case.  In order for habeas corpus relief to be warranted on the

basis of incorrect jury instructions, a petitioner must show more than that the instructions are

undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm

that they rendered the entire trial fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72

(1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52

(6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of

review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in

*Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we

'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"

*Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  If an

instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if

---

[2]Because these claims obviously have not been adjudicated by the state courts, I assess their
merit *de novo*, rather than under the deferential AEDPA standard of review.  *See* 28 U.S.C. § 2254(d)
(establishing deferential standard of review for "any claim that was adjudicated on the merits in State
court proceedings[.]").

there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

### b. Reasonable Doubt Instruction

In his second proposed claim, petitioner contends that the trial court's instruction defining reasonable doubt was defective. Specifically, he contends that the trial court erred by not instructing the jury that reasonable doubt requires proof to a moral certainty, or that a reasonable doubt is one which would cause a person of ordinary prudence to hesitate to act in the important affairs of life. This claim is plainly meritless.

The trial court instructed the jury that

[a] reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence in this case. It is not merely an imaginary or a possible doubt, but a doubt based upon reason and common sense. A reasonable doubt is just that; a doubt that is reasonable after a careful and considered examination of the facts and circumstances in this case.

Jury Trial Tr., dated 2/2/09, at 7. As the Supreme Court has explained, "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). Rather, the only question is whether, "'taken as a whole, the instructions . . . correctly convey the concept of reasonable doubt to the jury.'" *Id.* (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). Here, the instructions did so. There was no error in the court's definition of reasonable doubt as a doubt based on reason. Although the definition was circular and of little help, it did not misstate the definition of "reasonable doubt," nor did it shift the burden of proof to defendant. *Murphy v. Holland*, 776 F.2d 470, 476 (4th Cir. 1985)

6

("An instruction that a reasonable doubt is 'a doubt for which a reason can be given' merely conveys what is already axiomatic from the plain meaning of those very words. . . .  While such a definition does nothing to advance the jury's understanding of reasonable doubt, it in no way undermines or destroys their common sense appreciation of that term's meaning."), *vacated on other grounds*, 475 U.S. 1138 (1986); *cf. United States v. Romero*, 32 F.3d 641, 651-52 (1st Cir. 1994).  Further, a number of courts have upheld similar instructions on habeas review.  *See, e.g.*, *Chalmers v. Mitchell*, 73 F.3d 1262, 1268 (2d Cir. 1996); *Murphy*, 776 F.2d at 477-78 (4th Cir. 1985) (citing cases), *remanded for reconsideration on other grounds*, 475 U.S. 1138 (1986).  Nor did the trial court err in failing to equate proof beyond a reasonable doubt with proof to a moral certainty.  Contrary to petitioner's assertion, instructing the jury that they must be convinced of a defendant's guilt to a "moral certainty" is not a constitutional requirement.  Indeed, although instructions containing such language may or may not be constitutional, *compare Victor*, 511 U.S. at 21-22, *with Cage v. Louisiana*, 498 U.S. 39, 39-41 (1990) (per curiam), the Supreme Court has explicitly stated that it does "not condone the use of the phrase." *Victor*, 511 U.S. at 16; *see also*, *id*. at 22, and a number of courts have strongly cautioned against the use of such language.  *See, e.g.*, *Chalmers v. Mitchell*, 73 F.3d 1262, 1269-70 (2d Cir.), *cert. denied*, 117 S. Ct. 106 (1996); *Smith v. Butler*, 696 F. Supp. 748, 753-54 (D. Mass. 1988), *aff'd*, 879 F.2d 853 (1st Cir. 1989); *see also*, *Victor*, 511 U.S. at 23 (Kennedy, J., concurring) ("I cannot understand, however, why such an unruly term should be used at all when jurors are asked to perform a task that can be of great difficulty when instructions are altogether clear."); *id*. at 24 (Ginsburg, J., concurring in part) ("I agree, further, with the Court's suggestion that the term 'moral certainty,' while not in itself so misleading as to render the instructions unconstitutional, should be avoided as an unhelpful way of explaining what reasonable

7

doubt means.").   Likewise, there is no requirement that a reasonable doubt instruction contain the "hesitate to act" language identified by petitioner.  *See United States v. Taylor*, 997 F.2d 1551, 1556 (D.C. Cir. 1993).

As the Court explained in *Victor*:

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course.  Indeed, so long as the court instructs on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.

*Victor*, 511 U.S. at 5 (citations omitted) (internal quotation omitted).  Indeed, attempts to define reasonable doubt are so troublesome that at least two circuit courts "have admonished their District Judges not to attempt a definition."  *Victor*, 511 U.S. at 25 (Ginsburg, J., concurring in part) (citing *United States v. Adkins*, 937 F.2d 947, 950 (4th Cir. 1991); *United States v. Hall*, 854 F.2d 1036, 1039 (7th Cir. 1988)).  Here, the trial court's definition adequately conveyed to the jury that it could convict only if the prosecution had proved petitioner guilty beyond a reasonable doubt.  The court's instruction also made it clear that the jury's decision had to be based on a careful examination of the evidence in the case.  The instruction did not lower the government's burden of proof, nor suggest to a reasonable jury that petitioner could be convicted based on a lower burden of proof.  Accordingly, this claim is plainly meritless.

### c.  Order of Deliberation Instruction

In his third proposed claim, petitioner contends that he was denied a fair trial when the trial court omitted his self-defense theory from the instruction explaining to the jury the order of consideration of the charges.  At the outset, petitioner's claim mischaracterizes the instruction at

issue.  The instruction did not, contrary to petitioner's argument, direct the order of the jury's deliberations.  Rather, the instruction upon which petitioner bases his claim merely explained to the jury the verdict form provided to the jury for marking its verdict.  The court instructed:

> Now, I'm also going to send in with you a verdict form and this is the verdict form and it lists all the possible verdicts that you can reach in this case and you can only mark one box under each count or charge.  The first count is first degree murder premeditated.
> There are four choices under that count.  You will mark only one box.  It's either not guilty of first degree murder or guilty of first degree murder or guilty of the lesser offense of second degree murder or guilty of the lesser offense of voluntary manslaughter.
> So, again, in Count IV [sic] there are four possibilities.  You can only mark one verdict.  Count II is assault with intent to murder.  That is as to Jeremy Benedict.  There are two choices.  It's either not guilty or guilty of assault with intent to murder as it pertains to Jeremy Benedict.
> Then – oh, I'm sorry.  There are three choices under assault with intent to murder.  It's either not guilty, guilty or assault with intent to murder or guilty of the lesser offense of assault with intent to do great bodily harm less than murder.  So under Count II, three possible verdicts.  You can only pick one.
> Count III, it's also assault with intent to murder, but this is pertaining to Richard Klaumann.  It's either not guilty, guilty of assault with intent to murder or guilty of the lesser offense of assault with intent to do great bodily harm less than murder.
> Then Count IV, the fourth charge is felony firearm.  There are two possibilities, either not guilty or guilty of felony firearm.

Jury Trial Tr., dated 2/2/09, at 25-26.

As noted above, this instruction did not "order" the jury's deliberations.  Rather, it merely provided a summary of the possible verdicts the jury could reach.  Petitioner contends, essentially, that the verdict form should have explicitly stated that the jury could find him not guilty based on his self-defense theory.  But the judge had already provided the jury with a lengthy instruction on self-defense, *see id.* at 19-22, and specifically instructed the jury that it was the prosecutor's burden to prove beyond a reasonable doubt that petitioner did not act in self-defense.  *See id.* at 21-22.  The trial court's self-defense instruction tracked the Michigan Criminal Jury Instructions, *see* MICH. CJI

9

2D §§ 7.15, 7.16, 7.20, and accurately and fully explained the defense to the jury. The "not guilty" option on the verdict form fully subsumed these instructions. Because the jury was fully instructed that it should find petitioner not guilty unless the prosecution disproved self-defense beyond a reasonable doubt, the failure to include a specific option of not guilty by reason of self-defense on the verdict form did not deprive petitioner of a fair trial. *See United States v. Bell*, 584 F.3d 478, 484-85 (2d Cir. 2009); *Belgrave v. Greiner*, No. 97 CV 4179, 1999 WL 1007350, at *6 (E.D.N.Y. Aug. 31, 1999); *cf. United States v. Ramirez*, 537 F.3d 1075, 1083 (9th Cir. 2008). Accordingly, this claim is plainly meritless.

### d. Manslaughter Instruction

In his fifth proposed claim, petitioner contends that he was denied a fair trial by the trial court's manslaughter instruction. Petitioner concedes that the court instructed the jury on voluntary manslaughter, and he doe not argue that there was any error in the court's voluntary manslaughter instruction itself. Rather, he argues that the instruction was inadequate because it failed to explain to the jury the distinction between voluntary and involuntary manslaughter. He explicitly does "not argu[e] that involuntary manslaughter should have went to the Jury," Br. in Supp. of Mot. to Amend, at 22, but argues that when the court instructed the jury on voluntary manslaughter it was "mandatory" that it "give an instruction which distinguishes between both forms of murder so the Jury would not be confused and would be able to draw [a] meaningful distinction about what it was they were deliberating on concerning manslaughter." *Id*. This claim is meritless.

Under Michigan law voluntary "[m]anslaughter is murder without malice." *People v. Mendoza*, 468 Mich. 527, 534, 664 N.W.2d 685, 689 (2003). "Murder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation

10

. . . characterizes the offense of manslaughter [and] separates it from murder." *People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346, 350 (1991). Thus, "[u]nder Michigan law, 'voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control.'" *Todd v. Stegal*, 40 Fed. Appx. 25, 29 (6th Cir. 2002) (quoting *People v. Fortson*, 202 Mich. App. 13, 19, 507 N.W.2d 763, 767 (1993)). In other words, "to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Mendoza*, 468 Mich. at 535-36, 664 N.W.2d at 690. Voluntary manslaughter is distinguished from involuntary manslaughter, which "is the unintentional killing of another, without malice, during the commission of an unlawful act not amounting to a felony and not naturally tending to cause great bodily harm; or during the commission of some lawful act, negligently performed; or in the negligent omission to perform a legal duty." *Mendoza*, 468 Mich. at 536, 664 N.W.2d at 690; *accord People v. Datema*, 448 Mich. 585, 595-96, 533 N.W.2d 272, 276 (1995). As noted above, and as petitioner does not dispute, the trial court's voluntary manslaughter instruction fully explained to the jury the elements of voluntary manslaughter and distinguished that crime from the crime of murder. *See* Jury Trial Tr., dated 2/2/09. This instruction was not deficient because it did not further distinguish the crime of involuntary manslaughter, which was not a defense theory at trial or supported by any evidence, and which petitioner himself does not argue should have been presented to the jury. Unlike in *People v. Townes*, 391 Mich. 578 (1974), upon which petitioner relies, the trial court here did not give a confusing, undifferentiated instruction combining elements of both voluntary and involuntary

11

manslaughter that effectively removed voluntary manslaughter from the jury's deliberation.  *See People v. Paquette*, 214 Mich. App. 336, 340, 543 N.W.2d 342, 344 (1995).  Because the trial court gave a proper, non-confusing instruction on voluntary manslaughter and involuntary manslaughter was not presented as a defense theory, the trial court's failure to instruct on involuntary manslaughter or distinguish between the two forms of manslaughter did not deprive petitioner of a fair trial.  *See Richardson v. Berghuis*, No. 2:07-CV-13405, 2010 WL 3290961, at *7 (E.D. Mich. Aug. 16, 2010) (Tarnow, J.); *Berry v. Straub*, No. 01-10328, 2006 WL 508678, at *6-*7 (E.D. Mich. Mar. 1, 2006) (Lawson, J.).  Accordingly, this jury instruction claim is plainly meritless.[3]

2.     *Ineffective Assistance of Counsel Claims (Claims IV & VI)*

In his fourth and sixth proposed claims, petitioner asserts that his trial and appellate counsel

---

[3]As noted above, petitioner explicitly states that he is not arguing an involuntary manslaughter instruction should have been given as a lesser offense instruction.  To the extent he did so argue, his claim would remain meritless.  First, there was no evidence supporting an involuntary manslaughter instruction.  Second, this claim does not present a cognizable basis for habeas review.  Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua sponte* on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not requires a lesser-included offense instruction in non-capital cases."  *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001).  As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review."  *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002).  Third, any error in failing to give the instruction was harmless.  The Supreme Court has recognized that "in cases involving offenses on a ladder, if the trial court wrongfully refuses to charge the offense at the bottom rung, that error is harmless provided the jury returns a guilty verdict for an offense higher up rather than for an intermediate offense which is also charged."  *Geschwendt v. Ryan*, 967 F.2d 877, 884 (3d Cir. 1992) (discussing *Schad v. Arizona*, 501 U.S. 624, 647-48 (1991)); *accord Six v. Delo*, 94 F.3d 469, 478 (8th Cir. 1996); *Allridge v. Scott*, 41 F.3d 213, 220 (5th Cir. 1994); *Slade v. Taylor*, 689 F. Supp. 595, 599 (E.D. Va. 1988).  Because petitioner was convicted of the greater offense of first degree murder over the intermediate offenses of second degree murder and voluntary manslaughter, petitioner was not prejudiced by the trial court's failure to instruct on involuntary manslaughter.

were constitutionally ineffective.  The Court should conclude that these claims are plainly meritless.

*a.  Governing Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.  It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818,

13

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

With respect to appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id*. As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

*b. Analysis*

In his proposed fourth claim, petitioner contends that counsel was ineffective for failing to object to the defective oath administered to the jury, and for failing to object to the trial court's defective jury instructions. Although the oath given by the trial court did not track word-for-word the oaths set forth in MICH. CT. R. 2.511(G) and MICH. COMP. LAWS § 768.14, "[w]hen read together with the remainder of the trial court's comments and instructions, the substance of the oath administered served its purpose of informing the jurors that they were to pay attention to the evidence, judge the credibility and demeanor of the witnesses, and conduct themselves at all times consistent with the important role in which they were serving." *People v. Carter*, No. 239350, 2003

14

WL 22017813, at *1 (Mich. Ct. App. Aug. 26, 2003).  Thus, petitioner was not prejudiced by the oath administered.  Further, any objection by counsel would have resulted merely in the giving of a proper oath, and petitioner cannot establish that he was prejudiced by counsel's failure to object. With respect to the jury instruction claims, as explained above petitioner cannot show any error in the instructions given by the trial court.  It is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).  Thus, petitioner's trial counsel claim is plainly meritless.

Similarly, in his proposed sixth claim petitioner contends that appellate counsel was ineffective for failing to raise his jury oath and jury instruction claims on direct appeal.  As explained above, the defect in the jury oath did not prejudice petitioner, and thus would have provided no basis for reversing his conviction.  *See Carter*,  2003 WL 22017813, at *1.  Likewise, because petitioner's jury instruction claims are without merit, counsel was not ineffective for failing to raise them on direct appeal.  Thus, petitioner's appellate counsel claim is plainly meritless.

D.    *Conclusion*

In view of the foregoing, the Court should that the proposed claims set forth in petitioner's motion to amend are plainly meritless, and therefore both leave to amend to add these claims would be futile and a stay is not appropriate under *Rhines*.  Accordingly, the Court should deny petitioner's motion to amend and request for a stay.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED.

15

R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections

S/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: July 24, 2013

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 24, 2013.

s/Felicia M. Moses
FELICIA M. MOSES
*Rotating Acting Case Manager*

16